**FRIENDS OF TWIN LAKES,**
Appellant,

v.

**CITY OF ROSEVILLE, Respondent.**

No. A08–1264.

Court of Appeals of Minnesota.

April 21, 2009.

Julie A. Root, St. Paul, for appellant.

John M. Baker, Pamela L. VanderWiel, Greene Espel, P.L.L.P., Minneapolis, for respondent.

Considered and decided by WORKE, Presiding Judge; CONNOLLY, Judge; and STAUBER, Judge.

## OPINION

CONNOLLY, Judge.

Respondent City of Roseville approved a development plan submitted by Northwestern College without requiring the completion of an environmental-impact statement (EIS). Appellant Friends of Twin Lakes challenged respondent's decision in district court, and the district court granted summary judgment in favor of respondent. Because no EIS was required, we affirm.

## FACTS

The southern portion of Northwestern College's main campus is located in the City of Roseville and borders Lake Johanna and Little Lake Johanna. Appellant is a non-profit corporation located in Roseville.

On November 17, 2006, Northwestern submitted an application for an amendment to a pre-existing Planned Unit Development (PUD) to respondent. The application is part of Northwestern's plan to accommodate an anticipated increase in enrollment. Over a 12–20 year time frame, the plan proposes construction of 8 new structures, additions to several existing buildings, and the creation of a campus green by re-routing a road that currently bisects the campus.

On February 7 and March 7, 2007, respondent's planning commission held public hearings to review and consider Northwestern's application. On March 7, the planning commission voted 6–0 to recom-

mend the application's approval to respondent's city council, subject to the completion of an environmental assessment worksheet (EAW). Northwestern agreed to complete the requested EAW.

On May 7, respondent determined that it was the responsible government unit (RGU) tasked with reviewing the EAW under the Minnesota Environmental Policy Act (MEPA). On May 11, the EAW was submitted to respondent. Respondent received written public comments on the amendment from May 21 to June 20, 2007. On July 23, respondent held a public hearing to discuss the amendment. At the end of this meeting, respondent determined, by a 3–2 vote, that the proposed amendment did not have the potential for significant environmental effects and that, as a result, an EIS was not required. Respondent issued findings of fact in support of its negative declaration. On October 8, respondent approved the amendment.

Following the city council's vote, appellant initiated suit, alleging that respondent failed to conduct a proper review of the amendment. The district court granted respondent's motion for summary judgment under MEPA. A notice of appeal was filed with this court.

## ISSUES

I. **Was the city's decision not to prepare an environmental impact statement arbitrary and capricious or unsupported by substantial evidence?**

   a. **Was the environmental assessment worksheet complete?**

   b. **Did respondent violate the Minnesota Environmental Policy Act by considering pre-existing regulatory oversight when determining that the proposed plan does not have the potential to create any significant environmental effects?**

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990).

An EAW is "a brief document which is designed to set out the basic facts necessary to determine whether an environmental impact statement is required" for a particular proposal or project. Minn.Stat. § 116D.04, subd. 1a(c) (2008). MEPA requires an RGU to prepare an EIS before engaging in any major governmental action when that action creates the "potential for significant environmental effects." *Id.*, subd. 2a (2008).

The Minnesota Environmental Quality Board (MEQB) has set forth four criteria that an RGU is required to analyze when determining whether a proposed project has the potential for significant environmental effects: (1) the "type, extent, and reversibility of environmental effects"; (2) the "cumulative potential effects of related or anticipated future projects"; (3) "the extent to which the environmental effects are subject to mitigation by ongoing public regulatory authority"; and (4) "the extent to which environmental effects can be anticipated and controlled as a result of other available environmental studies undertaken by public agencies or the project proposer, including other EISs." Minn. R. 4410.1700, subd. 7 (2007). "Connected actions and phased actions shall be considered a single project for purposes of the determination of need for an EIS." *Id.*, subd. 9 (2007). An RGU's analysis must take into account both the project's EAW and any comments received during the public-comment period. Minn.Stat. § 116D.04, subd. 2a(b).

The party challenging an RGU's decision, which in this case is appellant, has the burden of proving that its findings are unsupported by the evidence as a whole. *Citizens Advocating Responsible Dev. v. Kandiyohi County Bd. of Comm'rs,* 713 N.W.2d 817, 833 (Minn.2006) (*CARD*). When faced with a summary-judgment order affirming a negative declaration regarding the need for an EIS, we review the proceedings before the RGU decision-making body, not the findings of the district court. *Iron Rangers for Responsible Ridge Action v. Iron Range Res.,* 531 N.W.2d 874, 879 (Minn.App.1995), *review denied* (Minn. July 28, 1995) (*Iron Rangers*). In doing so, we evaluate whether the RGU took a "hard look" at the salient issues, but defer to the RGU's decision unless the decision reflects an error of law, is arbitrary and capricious, or is unsupported by substantial evidence. *CARD,* 713 N.W.2d at 832.

Substantial evidence is "1. [s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2. [m]ore than a scintilla of evidence; 3. [m]ore than some evidence; 4. [m]ore than any evidence; and 5. [e]vidence considered in its entirety." *White v. Minn. Dep't of Natural Res.,* 567 N.W.2d 724, 730 (Minn.App.1997), *review denied* (Minn. Oct. 31, 1997); *see also Iron Rangers,* 531 N.W.2d at 881 (noting that speculative factors are insufficient to compel an RGU to prepare an EIS). An RGU's determination that no EIS is necessary is arbitrary and capricious if the decision represents "its will, rather than its judgment." *Pope County Mothers v. Minn. Pollution Control Agency,* 594 N.W.2d 233, 236 (Minn.App.1999). Accordingly, a decision is deemed arbitrary and capricious if it (1) is based on factors that the legislature did not intend for the RGU to consider; (2) entirely fails to address an important aspect of the problem; (3) offers an explanation that is counter to the evidence; or (4) is so implausible that it could not be explained as a difference in view or the result of the RGU's decision-making expertise. *CARD,* 713 N.W.2d at 832.

*a. The Environmental Assessment Worksheet was complete.*

Appellant contends that respondent's negative declaration was unsupported by substantial evidence because the EAW did not precisely define the increase in the gross square footage of Northwestern's campus that is contemplated by the amendment to the PUD.

Northwestern's amendment proposes a gross square footage increase from 656,306 gross square feet to approximately 1,068,091 gross square feet. This amounts to an approximate increase of 411,785 gross square feet. These figures are based upon a concept plan submitted by Northwestern in support of its application. The concept plan shows the anticipated number of stories and the rough size, shape, and placement of the proposed structures. The consultant who prepared the EAW reviewed the concept plan and independently estimated that the project would result in an increase of approximately 414,600 gross square feet.

Appellant argues this figure was unsupported by substantial evidence because the concept plans submitted by Northwestern contained only estimated, rather than actual, square-footage estimates for the proposed buildings. While appellant may disagree with respondent's use of square-footage estimates for buildings that are to be built over the course of 12–20 years, it has not provided any evidence to suggest that the estimates used in the EAW are unreasonable. Given the lack of evidence to the contrary, appellant has not met its

burden of proving that respondent's decision was unsupported by substantial evidence.[1] *See Iron Rangers,* 531 N.W.2d at 881 (stating that "[w]here there are technical disputes and uncertainties, the court must assume that the agency or RGU has exercised its discretion appropriately").

b. *Respondent properly considered preexisting regulatory oversight when determining whether the proposed amendment had the potential to create a significant environmental effect.*

■ Appellant argues that respondent improperly considered the ability of preexisting regulatory oversight to mitigate the proposed amendment's environmental effect. At the outset, we note that respondent did not rely solely on future regulatory oversight to mitigate the proposed amendment's environmental effect. The findings issued by respondent in conjunction with its negative declaration include numerous mitigation measures Northwestern is required to take, such as (1) requiring Northwestern to preserve a migratory bird habitat, to replant native trees, and to maintain a buffer area to mitigate the impact on migratory birds; (2) post-habitat restoration to mitigate temporary effects on wildlife; (3) changes to nearby roads to mitigate effects on traffic; (4) curfews and implementation of MPCA standard noise guidelines for public announcements to mitigate neighbors' exposure to increased noise; and (5) sweeping and watering of construction sites and limited digging, backfilling, and boring to mitigate dust generation.

Next, the rules promulgated by the MEQB explicitly require an RGU to consider "the extent to which the environmen-

tal effects are subject to mitigation by ongoing public regulatory authority." Minn. R. 4410.1700, subp. 7. As it was required to, respondent considered this criterion in its decision-making process. For example, respondent relied in part on future permitting to regulate the construction of the proposed structures. Specifically, Northwestern is required to obtain permits from respondent, the Minnesota Pollution Control Agency (MPCA), and the Rice Creek Watershed District before it can begin construction on any project.

Furthermore, caselaw supports the use of pre-existing regulatory oversight as a means of preventing significant environmental effects before they occur. In *Trout Unlimited v. MN Dep't of Agric.,* the RGU determined that an EIS was unnecessary despite evidence that the proposed project had the potential for significant environmental effects. 528 N.W.2d 903, 905 (Minn.App.1995). This court held that the RGU's decision was arbitrary and capricious because the "project would go forward without an EIS and in the event significant environmental effects did occur, the [RGU] would then rely on monitoring or restrictive permitting procedures to reduce or eliminate those deleterious effects." *Id.* at 909. This court went on to explain that such reliance was improper because the purpose of an EIS "is to determine the potential for significant environmental effects before they occur." *Id.* Unlike *Trout Unlimited,* respondent incorporated the use of restrictive permitting in order to prevent negative environmental effects before they occur rather than an attempt to remedy such effects after they transpire. Supporting this interpretation

---

1. In addition, for a city the size of Roseville, EISs are mandated for projects proposing an increase of 750,000 gross square feet or more. Minn. R. 4410.4400, subp. 11(B) (2007). Ap-

pellant has not produced any evidence suggesting that the proposed amendment meets this threshold.

is the Minnesota Supreme Court's decision in *CARD:*

> While mitigation by an ongoing regulatory authority is a required consideration in a project-specific EIS determination review, the court of appeals in several cases has stated that an RGU may not rest its EIS determination decision on mitigation that amounts to only vague statements of good intentions. We agree with this approach and adopt it as our own. Accordingly, we conclude that it is not sufficient for an RGU to release an EIS determination stating that it did not bother to investigate environmental effects because it was confident it could later pass regulations if any environmental harm occurred. *Under MEPA, an RGU must determine whether a given project has the potential for significant environmental effects before approving the project.*
>
> When an RGU considers mitigation measures as offsetting the potential for significant environmental effects under Minn. R. 4410.1700, it may reasonably do so only if those measures are specific, targeted, and are certain to be able to mitigate the environmental effects. The RGU must have some concrete idea of what problems may arise and how they may specifically be addressed by ongoing regulatory authority. There is a definite difference between an RGU review that approves a project with vague promises of future mitigation and an RGU review that has properly examined a project and determined that specific measures can be reasonably expected to deal with the identifiable problems the project may cause.

713 N.W.2d at 834–35 (quotations omitted) (emphasis added).

Here, not only did respondent list specific mitigation measures that Northwestern is required to take, it also permissibly relied on existing regulatory oversight to prevent significant environmental impact before it occurred. *See Watab Twp. Citizen Alliance v. Benton County Bd. of Comm'rs,* 728 N.W.2d 82, 92 (Minn.App. 2007) (holding that county board's determination of no significant impact was supported by substantial evidence when the proposed project was subject to ongoing regulatory review and permitting), *review denied* (Minn. May 15, 2007). Unlike *Trout Unlimited* and *CARD,* respondent studied the situation and determined that the project does not have a potential for significant environmental effects because pre-existing regulatory oversight requires mitigation measures to be put into place to prevent any significant environmental effects before they occur. This court has repeatedly recognized that such regulatory oversight "weighs heavily in favor of a finding of no significant impact for an EIS." *Iron Rangers,* 531 N.W.2d at 881; *see also Watab Twp. Citizen Alliance,* 728 N.W.2d at 92 (holding that an RGU's determination of no significant impact is supported by substantial evidence when the "project will require an NPDES permit from the MPCA and the waste-water discharge is subject to ongoing regulatory review"). As a result, appellant's claim that respondent violated the MEPA by considering whether pre-existing regulatory oversight could prevent a significant environmental impact from occurring is without merit.

Finally, there is some dispute as to what comprises the record on appeal in this case. Specifically, appellant contends that documents relating to the pre-existing PUD should be considered by this court. We find it unnecessary to reach a conclusion on this issue because, even if the documents were properly part of the record before us, our decision would remain unchanged.

Respondent's decision to approve the proposed amendment was not arbitrary or capricious or unsupported by substantial evidence. After carefully considering the evidence before it, including the extent to which pre-existing regulatory oversight will act to prevent any significant environmental effects from occurring, respondent exercised its judgment and approved the proposed amendment. While appellant may disagree with this judgment, it has failed to prove that respondent's findings are unsupported by the evidence as a whole. From the record before us, it is clear that respondent took a hard look at the salient issues presented by the proposed amendment. As a result, we defer to respondent's decision to approve the proposed amendment.

## DECISION

Because respondent properly considered the extent to which pre-existing regulatory oversight will prevent the proposed amendment to the PUD from having any significant environmental effects when determining that an EIS was not needed, the district court did not err in granting summary judgment in respondent's favor.

**Affirmed.**